**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | | |
|---|---|---|
| ADVOCATE HEALTH CARE NETWORK and, | ) | |
| ADVOCATE AURORA HEALTH, INC. | ) | |
| | ) | |
| *Plaintiffs*, | ) | Case No. |
| | ) | |
| v. | ) | |
| | ) | |
| SPECWORKS, INC. and CORINA PEACOCK, | ) | |
| | ) | |
| *Defendants*. | ) | |

## COMPLAINT

Plaintiffs, Advocate Health Care Network ("Advocate Illinois") and Advocate Aurora Health, Inc. ("AAH") (together "Advocate Health" or "Plaintiffs"), by their attorneys, Quarles & Brady LLP, for their Complaint against Defendants, SpecWorks, Inc. ("SpecWorks") and Corina Peacock ("Peacock") (collectively, "Defendants"), allege as follows:

## NATURE OF THE CASE

1. This is an action for injunctive relief to halt Defendants' trademark infringement, false endorsement, unfair and deceptive trade practices, consumer fraud, and breach of contract. It arises from Defendants' unlawful use of Advocate Health's trademark rights despite having no license or authority to do so, including long after Advocate Health notified Defendants it would no longer do business with them. Despite Advocate Health's continued demands that Defendants cease and desist from infringing these marks and marketing their products, Defendants persisted doing so knowingly and recklessly. Defendants' conduct must be stopped.

2. ██████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

1

████████████████████████████████████████████████████████

████████████████████████████████████ Despite having no authority to use Advocate Health's trademarks, SpecWorks continued to—and, indeed, continues to—use Advocate Health's trademarks on numerous promotional e-mails to Advocate Health employees and hold itself out as still being the official outlet for Advocate Health branded apparel, promotional items, and accessories.

3. Advocate Health seeks, and is entitled to, injunctive relief to enjoin further improper and unlawful use of its marks, and stop, correct, and/or retract Defendants' continued dissemination of communications to Advocate Health employees regarding Defendants' false association with Advocate Health. Moreover, Advocate Health should be compensated for damages resulting from Defendants' infringement, egregious and brazen behavior, and the harm caused to Advocate Health due to the infringement, false narrative, and breach of contract.

## THE PARTIES

4. Plaintiff, Advocate Health Care Network is an Illinois not-for-profit corporation with its principal place of business at 2025 Windsor Drive, Oak Brook, Illinois 60523.

5. Plaintiff Advocate Aurora Health, Inc. is a Delaware not-for-profit corporation with its principal place of business at 750 W. Virginia Street, Milwaukee, Wisconsin 53204.

6. Defendant SpecWorks, Inc. is a Maryland corporation with its principal place of business located at 810 S. Bond Street, Baltimore, Maryland 21231.

7. Defendant Corina Peacock is an individual and, upon information and belief, resides in Towson, Maryland. Peacock is President and Chief Executive Officer of SpecWorks.

---

[1] The Agreement contains a confidentiality clause and, accordingly, will be redacted and/or filed under seal as this case progresses subject to an appropriate protective order.

8.     Defendants have caused acts or events to occur in the Northern District of Illinois, out of which Plaintiffs' claims arise.

## JURISDICTION AND VENUE

9.     This Court has subject matter jurisdiction pursuant to 28 U.S.C. §§ 1331, 1338, 1367 and 15 U.S.C. § 1121. The civil action alleged arises under the laws of the United States, including an Act of Congress relating to trademarks and unfair competition and the laws of the State of Illinois relating to property and business transactions.

10.     This Court has personal jurisdiction over Defendants because Defendants conduct business in the State of Illinois. Jurisdiction also exists because Defendants have intentionally broadcasted communications to Plaintiffs and their employees (including numerous employees in Illinois) representing Defendants to be the official supplier of Advocate Health branded items and offering to sell same indicating Plaintiffs have an association or affiliation with or sponsorship of SpecWorks. Defendants have unlawfully used, and continue to use, Plaintiffs' trademarks in or into Illinois and this judicial District, thereby causing injury and damages in Illinois and this judicial District.

11.     On information and belief, Peacock and at least one other SpecWorks employee traveled to this District and Advocate Health hospitals numerous times to further SpecWork's business interests.

12.     On information and belief, Peacock, as President and Chief Executive Officer of SpecWorks, has met with Advocate Health employees in this District.

13.     On information and belief, SpecWorks routinely operated pop-up stores and sold Advocate Health branded merchandise at Advocate Health hospital sites.

14.     Venue is proper in this judicial district pursuant to 28 U.S.C. §§ 1391. Venue is proper in the Northern District of Illinois because Plaintiffs' claims arose within this District and are causing harm in this District.

### FACTUAL BACKGROUND

### ADVOCATE ILLINOIS'S TRADEMARKS AND BRAND

15.     Advocate Illinois first used the ADVOCATE trademark in 1995 for health care and hospital services.

16.     Advocate Illinois first used the Purple Cross Logo (shown below) trademark in 1995 for hospital and related health care services, physician services, mental health services, and nursing home services.



17.     It has been using ADVOCATE, variations of that mark, and its Purple Cross Logo ever since.

18.     Advocate Illinois has a number of registered trademarks for its health services and hospital services operations, which have become well known by patients and employees of Advocate Illinois, its licensees and partners, and the consuming public including, among others, the following:

    a.      U.S. Trademark Registration No. 3,761,868 for ADVOCATE for use in connection with health care services and hospital services, registered on

4

March 16, 2010, filed on February 22, 2005, and having a first use date of January 1995.

b.    U.S. Trademark Registration No. 2,080,541 for  (Purple Cross Logo) for use in connection with hospital services and related health care services, physician services, mental health services, and nursing home services, registered on July 22, 1997, filed on March 2, 1995, and having a first use date of January 1995.

c.    U.S. Trademark Registration No. 3,902,148 for ADVOCATE HEALTH CARE for use in connection with heath care services and hospital services, home health care services, registered on January 4, 2011, filed on August 31, 2005, and having a first use date of November 1994.

d.    U.S. Trademark Registration No. 3,921,946 for ADVOCATE MEDICAL GROUP for use in connection with physician services, health care services and hospitals, registered on February 22, 2011, filed on February 5, 2010, and having a first use date of December 1, 1995.

19.    Attached as **Exhibit "A"** are complete and authentic copies of the Certificates of Registration for these marks.

20.    U.S. Trademark Registration Nos. 2,080,541; 3,761,868; 3,902,148; and 3,921,946 are valid, subsisting and in full force and effect.

21.    U.S. Trademark Registration Nos. 2,080,541; 3,761,868; 3,902,148; and 3,921,946 have acquired incontestable status under Section 15 of the Lanham Act 15 U.S.C. § 1065.

22.    Advocate Illinois also has common law rights in ADVOCATE, ADVOCATE-formative marks, and marks similar to the Purple Cross Logo for use in its hospital and health

services operations as well as on promotional items, marketing collateral, and other uses for the promotion of the Advocate Health brand. Together, Advocate Illinois's registered marks and common law marks are referred to collectively as the "ADVOCATE Marks."

23.     For over 30 years, Advocate Illinois has used ADVOCATE and the Purple Cross Logo extensively in commerce and in connection with healthcare, hospital, and related services, and complementary marketing and promotion of the brand, including through use of the brand on apparel, promotional items, hard goods, soft goods, other accessories, and through various domain names, including www.advocatehealth.com; www.advocatehealth.org; and www.aah.org.

24.     Through extensive use and marketing, the ADVOCATE Marks have become recognized in the community and the healthcare industry as being associated with high quality healthcare, hospital, and related services, and are therefore very valuable to Advocate Illinois.

25.     Advocate Health branded apparel, hard goods, soft goods, promotional items, and accessories are used and found throughout Advocate Illinois's, and its licensees', operations, at conferences, in community events, and during fundraising and promotional activities.

26.     Advocate Health branded apparel, hard goods, soft goods, promotional items, and accessories are used and worn by employees, sold and given away to donors, patients, students, and others, and available for purchase at hospital gift stores.

27.     Advocate Illinois has invested significant resources in its marketing efforts to promote its brand, including through its licensing, partnerships, and affiliations with AAH and the greater AH Enterprise (defined below).

28.     As a result, through Advocate Illinois's and its licensees' extensive and continuous use of the ADVOCATE Marks, they are entitled to strong protection from infringement, unfair competition, deceptive trade practices, and state law consumer fraud violations.

## ADVOCATE AURORA HEALTH'S TRADEMARK AND BRAND

29.     Plaintiff AAH first used its ADVOCATE AURORA HEALTH trademark in 2018 for health care and hospital services after its combination with Plaintiff Advocate Illinois.

30.     AAH and its licensees have been using ADVOCATE AURORA HEALTH and variations of that mark, with and without the logo, ever since.

31.     AAH owns registered trademarks for its health services and hospital services operations, which have become well known by patients and employees of AAH, its licensees and partners, and the consuming public, including, among others, the following:

    a.     U.S. Trademark Registration No. 5,863,050 for ADVOCATEAURORAHEALTH for use in connection with health care and hospital services, registered on September 17, 2019, filed on March 18, 2019, and having a first use date of April 2018.

    b.     U.S. Trademark Registration No. 5,863,051 for  for use in connection with health care and hospital services, registered on September 17, 2019, filed on March 18, 2019, and having a first use date of April 2018.

32.     Attached as **Exhibit "B"** are complete and authentic copies of the Certificates of Registration for these marks.

33.     U.S. Trademark Registration Nos. 5,863,050 and 5,863,051 are valid, subsisting, and in full force and effect.

34.     AAH also has common law rights in ADVOCATE AURORA HEALTH and ADVOCATE AURORA HEALTH-formative marks for use in its hospital and health services operations as well as on promotional items, marketing collateral, and other uses for the promotion

of Advocate Health and the greater AH Enterprise. Together, AAH's registered marks and common law marks are referred to collectively as the "AAH Marks."

35.     Since combining with Advocate Illinois in 2018, AAH has used ADVOCATE AURORA HEALTH in commerce and in connection with healthcare, hospital, and related services, and complementary marketing and promotion of the brand.

36.     Through their use and marketing, the AAH Marks have become recognized in the community and the healthcare industry as being associated with high quality healthcare, hospital, and related services, and are therefore very valuable to AAH.

37.     The AAH Marks, like some of the ADVOCATE Marks, also use ADVOCATE and HEALTH prominently.

38.     AAH has invested significant resources in its marketing efforts to promote its brand, including through its licensing, partnerships, and affiliations with Advocate Illinois and the greater AH Enterprise (defined below).

39.     As a result, through AAH's and its licensees' use of the AAH Marks, they are entitled to strong protection from infringement, unfair competition, deceptive trade practices, and state law consumer fraud violations.

## THE ADVOCATE HEALTH ENTERPRISE

40.     Plaintiffs Advocate Illinois and AAH, along with non-parties Advocate Health, Inc., Charlotte-Mecklenburg Hospital Authority (d/b/a Atrium Health), Aurora Health Care, Inc., and Wake Forest School of Medicine make up the Advocate Health Enterprise ("AH Enterprise").

41.     Advocate Illinois and AAH license the ADVOCATE Marks and AAH Marks, respectively, to each other, and to the AH Enterprise.

42.    The AH Enterprise is the country's third largest non-profit integrated health system. AH Enterprise manages a network of hospitals, clinics, and physicians for the provision of general and specialized healthcare services.

43.    The AH Enterprise has over 160,000 teammates (over 75,000 of which are part of Advocate Illinois and AAH), including over 35,000 doctors and aligned medical staff, and 42,000 nurses.

44.    The AH Enterprise has a footprint across six states: Illinois, Wisconsin, North Carolina, South Carolina, Georgia, and Alabama. It has 69 hospitals, over 1,000 sites of care, and 5.4 million unique patients.

45.    Advocate Illinois alone makes up 11 of those hospitals, and more than 250 of those sites of care.

46.    In 2024 alone, the AH Enterprise marketed the ADVOCATE Marks and brand in six states, in 69 hospitals, and 1,000 care sites, reaching more than 5,400,000 unique patients.

47.    Advocate Illinois also owns, uses, and licenses other ADVOCATE Marks for use with its own and the AH Enterprise's services and promotional activities, including the following:



**ADVOCATE HEALTH'S BUSINESS WITH SPECWORKS AND TERMINATION**



███ ▓▓ ███████████████████████████████████████

████████████████████████████████████████████

███ ▓▓ ███████████████████████████████████████

████████████████████████████████████████████████

███ ▓▓ ███████████████████████████████████████

**DEFENDANTS' CONTINUED USE OF ADVOCATE MARKS, TRADEMARK INFRINGEMENT, AND BREACH OF CONTRACT**

53.      ███████████████████████████████████ Advocate Health discovered that the online employee store operated by SpecWorks—and used by Advocate Health employees to buy Advocate Health branded apparel and promotional items from SpecWorks—was still active.

54.      Advocate Health promptly notified SpecWorks of the issue and requested that it deactivate the webstore. Advocate Health further requested SpecWorks stop contacting Advocate Health employees with e-mails purportedly touting new Advocate Health branded products.

55.      Defendants did not comply.

56.      On February 5, 2024, Advocate Health sent a letter to SpecWorks reiterating its request that SpecWorks close the webstore. ███████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████

███ ▓▓ ███████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

██████████████████████████



61.     Defendants also stated that they could not disable the online webstore because they needed to process returns.

62.     Nevertheless, Advocate Health worked in good faith to discuss the matter with Defendants in an effort to resolve the matter amicably and short of litigation.

63.     Despite Advocate Health's willingness to continue discussions, Defendants delayed providing Advocate Health the requested information and did not provide it until July 2024.

64.     Throughout the summer of 2024, with the assistance of their retained counsel, Defendants continued to assure Advocate Health that they were complying with the cease and desist demand, and that they wanted to discuss an amicable resolution. Settlement discussions between the parties proceeded slowly, but surely.

65.     However, despite these assurances and—and, it seems, without the knowledge of Defendants' own counsel—in the background, Defendants were charging ahead with an

aggressive, surreptitious effort to market and sell Advocate Health branded product to Advocate Health employees directly. Defendants continued to use Advocate Health's employee e-mail information to solicit sales, including sending advertising e-mails to Advocate Health employees on at least July 29, 2024, August 9, 2024, August 16, 2024, August 19, 2024, September 10, 2024, September 27, 2024, October 4, 2024, November 11, 2024, and December 25, 2024.



[REDACTED]

73.     Even recently, on January 28, 2025, SpecWorks sent an e-mail to Advocate Health employees advertising a new "Webstore Launch" and Advocate Health branded merchandise, a portion of which is shown below. An example of the e-mail sent from SpecWorks to Advocate Health employees is attached as **Exhibit "D**."



74.     On January 31, 2025, SpecWorks sent out an identical e-mail to Advocate Health employees about the "Webstore Launch" for Advocate branded apparel and accessories.

## FIRST CLAIM FOR RELIEF
### (Trademark Infringement of the ADVOCATE Marks—
### 15 U.S.C. § 1114 against all Defendants)

75.     Advocate Illinois incorporates by reference each of the allegations contained in the previous paragraphs of the Complaint as though fully set forth herein.

76.     Defendants are not now, nor have they been since December 31, 2023, authorized to use the ADVOCATE Marks.

77.     Defendants have used, and continue to use, the ADVOCATE Marks in connection with their offer for sale and the actual sale of Advocate Health branded apparel and promotional products.

78.     Defendants' use of the ADVOCATE Marks is an effort to trade off of the goodwill developed in the ADVOCATE Marks.

79.     Defendants are using the ADVOCATE Marks in communications to Advocate Health employees and falsely purporting to be the official supplier of Advocate Health apparel, promotional products, and other goods.

80.     Defendants' unauthorized use of the ADVOCATE Marks is likely to cause confusion or mistake, or to cause the relevant public to falsely believe that Defendants are associated with, sponsored by, or licensed by Advocate Illinois.

81.     Defendants' use of the ADVOCATE Marks infringes Advocate Illinois's registered trademarks, including but not limited to U. S. Trademark Registration Nos. 2,080,541; 3,761,868; 3,902,148; and 3,921,946.

82.     Defendants' unauthorized reproduction of the ADVOCATE Marks on e-mail communications to Advocate Health employees and on apparel and other items is likely to and meant to cause confusion, mistake, or deceive Advocate Health employees and the relevant public such as their use is counterfeit.

83.     Advocate Illinois has demanded multiple times that Defendants cease all use of the ADVOCATE Marks and stop communicating with Advocate Health employees. Despite these clear and repeated demands, Defendants have willfully and recklessly ignored them. Defendants continue using the ADVOCATE Marks without any justification.

84.     Defendants have escalated their infringement, and as recently as January 28, 2025, sent Advocate Health employees an e-mail promoting a "Webstore Launch!" and using the ADVOCATE Marks in the name of the store as well as on mockups of the products they are offering.

████████████████████████████████████████████████████
████████████████████████████████

86.     ████████████████████████████████████████ written requests asking

Defendants to stop all use of the ADVOCATE Marks, Defendants had prior knowledge that their

use was not and is not authorized and is in violation of Advocate Health's rights.

87.     Accordingly, Defendants' actions, as set forth above, were and are intentional,

willful, and in reckless disregard of Advocate Illinois's rights.

88.     Defendants' actions, as set forth above, have unjustly damaged the ADVOCATE

Marks, and the goodwill associated with the marks.

89.     Defendants' actions, as set forth above, have unjustly enriched Defendants.

90.     Defendants' actions, as set forth above, are causing irreparable injury to Advocate

Illinois for which there is no adequate remedy at law.

91.     Defendants' actions, as set forth above, constitute willful trademark infringement

which entitles Advocate Illinois to enhanced damages and remedies set forth in 15 U.S.C. § 1117

and 15 U.S.C. § 1118.

92.     Advocate Illinois is entitled to recover its reasonable attorneys' fees and costs

pursuant 15 U.S.C. § 1117.

93.     Advocate Illinois is entitled to seizure of Defendants' goods bearing counterfeit

marks pursuant to 15 U.S.C. § 1116.

### SECOND CLAIM FOR RELIEF
**(False Endorsement of the ADVOCATE Marks—
15 U.S.C. § 1125(a) against all Defendants)**

94.     Advocate Illinois incorporates by reference each of the allegations contained in the

previous paragraphs of the Complaint as though fully set forth herein.

95.     As a result of Advocate Illinois's use of the ADVOCATE Marks, Advocate Illinois has federal trademark registrations for health, hospital, and related services, and has common law trademark rights in various other uses of the ADVOCATE Marks.

96.     The ADVOCATE Marks have come to represent and symbolize the reputation and valuable goodwill associated with Advocate Health's high-quality hospital, health, and related services.

97.     Defendants are not now, nor have they been since December 31, 2023, authorized to use the ADVOCATE Marks.

98.     Defendants are not affiliated with, sponsored, endorsed, or otherwise approved of by Advocate Health.

99.     Defendants have used and continue to use the ADVOCATE Marks, including on e-mail communications to Advocate Health employees and product examples of apparel and promotional items, in connection with their offer for sale and the actual sale of apparel and promotional items.

100.    Defendants have used and are using the ADVOCATE Marks in communications to Advocate Health employees and are falsely purporting to be the official supplier of Advocate Health apparel, promotional products, and other goods.

101.    Defendants' use of the ADVOCATE Marks is an effort to trade off of the goodwill developed in the ADVOCATE Marks.

102.    Defendants' unauthorized use of the ADVOCATE Marks, both registered and in common law, is likely to cause confusion or mistake, or to deceive customers or potential customers into falsely believing that that Defendants are associated with, sponsored, or licensed by Advocate Illinois, in violation of 15 U.S.C. § 1125(a)(1)(A).

103.    Advocate Illinois has demanded that Defendants cease all use of the ADVOCATE Marks.

104.    Defendants continue using the ADVOCATE Marks without any justification.

105.    Defendants have escalated their infringement, and as recently as January 28, 2025, sent Advocate Health employees an e-mail promoting a "Webstore Launch!" and using the ADVOCATE Marks in the name of the store as well as on mockups of the products they are offering.

██████ ██████████████████████████████████████████████████████████

███████████████████████

107.    ███████████████████████████████████ the written requests asking Defendants to stop all use of the ADVOCATE Marks, Defendants had prior knowledge that their use was not and is not authorized and is in violation of Advocate Illinois's rights.

108.    Accordingly, Defendants' actions, as set forth above, were and are intentional, willful, and in reckless disregard of Advocate Illinois's rights.

109.    Defendants' actions, as set forth above, have unjustly damaged the ADVOCATE Marks, the goodwill associated with the marks, and Advocate Illinois's business reputation.

110.    Defendants' actions, as set forth above, have unjustly enriched Defendants.

111.    Defendants' actions, as set forth above, are causing irreparable injury to Advocate Illinois for which there is no adequate remedy at law.

112.    Defendants' actions, as set forth above, constitute willful infringement, which entitles Advocate Illinois to enhanced damages and remedies set forth in 15 U.S.C. § 1117 and 15 U.S.C. § 1118.

## THIRD CLAIM FOR RELIEF
### (Illinois Uniform Deceptive Trade Practices Act with Respect to the ADVOCATE Marks— 815 ILCS 510 against all Defendants)

113.    Advocate Illinois incorporates by reference each of the allegations contained in the previous paragraphs of the Complaint as though fully set forth herein.

114.    As a result of Advocate Health's use of the ADVOCATE Marks, Advocate Illinois has federal trademark registrations for health, hospital, and related services, and has common law trademark rights in various other uses of the ADVOCATE Marks.

115.    The ADVOCATE Marks have come to represent and symbolize the reputation and valuable goodwill associated with Advocate Health's high-quality hospital, health, and related services.

116.    Defendants are not now, nor have they been since December 31, 2023, authorized to use the ADVOCATE Marks.

117.    Defendants are not affiliated with, sponsored, endorsed, or otherwise approved of by Advocate Illinois.

118.    Defendants have used and continue to use the ADVOCATE Marks, including on e-mail communications to Advocate Health employees and product examples of apparel and promotional items in connection with their offer for sale and the actual sale of apparel and promotional items.

119.    Defendants have used and are using the ADVOCATE Marks in communication to Advocate Health employees and falsely purporting to be the official supplier of Advocate Health apparel, promotional products, and other goods.

120.    Defendants' use of the ADVOCATE Marks is an effort to trade off of the goodwill developed in the ADVOCATE Marks.

121.    Defendants' unauthorized use of the ADVOCATE Marks and their unauthorized communications to Advocate Health employees and others is likely to cause confusion or mistake or deceive customers or potential customers into falsely believing that Defendants are associated with, sponsored, or licensed by Advocate Illinois, in violation of 815 ILCS § 510/2.

122.    Defendants have escalated their infringement, and as recently as January 28, 2025, sent Advocate Health employees an e-mail promoting a "Webstore Launch!" and using the ADVOCATE Marks in the name of the store as well as on mockups of the products they are offering.



124.    ████████████████████████ the written requests asking Defendants to cease all use of the ADVOCATE Marks, Defendants had prior knowledge that their use was not, and is not, authorized and is in violation of Advocate Illinois's rights.

125.    Accordingly, Defendants' actions, as set forth above, were and are intentional, willful, and in reckless disregard of Advocate Illinois's rights.

126.    Defendants' actions, as set forth above, have unjustly damaged the ADVOCATE Marks, business reputation, and the goodwill associated with the marks.

127.    Defendants' actions, as set forth above, have unjustly enriched Defendants.

128.    Defendants' actions, as set forth above, are causing irreparable injury to Advocate Illinois for which there is no adequate remedy at law, and Advocate Illinois is entitled to injunctive relief pursuant to 815 ILCS § 510/3.

129.    Defendants' actions, as set forth above, constitute willful deceptive acts, which entitles Advocate Illinois to their attorneys' fees set forth in 815 ILCS § 510/3.

## FOURTH CLAIM FOR RELIEF
### (Trademark Infringement of the AAH Marks—15 U.S.C. § 1114 against all Defendants)

130.    AAH incorporates by reference each of the allegations contained in the previous paragraphs of the Complaint as though fully set forth herein.

131.    Defendants are not now, nor have they been since December 31, 2023, authorized to use the AAH Marks or any marks using ADVOCATE and HEALTH.

132.    Defendants have used, and continue to use, confusingly similar variations of the AAH Marks in connection with their offer for sale and the actual sale of Advocate Health branded apparel and promotional products.

133.    Defendants' use of the AAH Marks, or confusingly similar variations of the AAH Marks, is an effort to trade off of the goodwill developed in the AAH Marks.

134.    Defendants are using the AAH Marks or confusingly similar variations of the AAH Marks, in communications to Advocate Health employees and falsely purporting to be the official supplier of Advocate Health apparel, promotional products, and other goods.

135.    Defendants' unauthorized use of the AAH Marks is likely to cause confusion or mistake, or to cause the relevant public to falsely believe that Defendants are associated with, sponsored by, or licensed by AAH.

136.    Defendants' use of the AAH Marks or confusingly similar variations of the AAH Marks, infringes AAH's registered trademarks, including but not limited to U. S. Trademark Registration Nos. 5,863,050 and 5,863,051.

137.    Defendants' unauthorized reproduction of the AAH Marks or confusingly similar variations of the AAH Marks, on e-mail communications to Advocate Health employees and on

apparel and other items is likely to and meant to cause confusion, mistake, or deceive Advocate Health employees and the relevant public such as their use is counterfeit.

138.    AAH has demanded multiple times that Defendants cease all use of the AAH Marks and any variations thereof and stop communicating with Advocate Health employees. Despite these clear and repeated demands, Defendants have willfully and recklessly ignored them. Defendants continue using the AAH Marks and/or variations thereof without any justification.

139.    Defendants have escalated their infringement, and as recently as January 28, 2025, sent Advocate Health employees an e-mail promoting a "Webstore Launch!" and using the AAH Marks, or confusingly similar variations of the AAH Marks, in the mockups of the products they are offering.

141.    ████████████████████████████ the written requests asking Defendants to stop all use of the AAH Marks, Defendants had prior knowledge that their use was not and is not authorized and is in violation of Advocate Health's rights.

142.    Accordingly, Defendants' actions, as set forth above, were and are intentional, willful, and in reckless disregard of AAH's rights.

143.    Defendants' actions, as set forth above, have unjustly damaged the AAH Marks, and the goodwill associated with the marks.

144.    Defendants' actions, as set forth above, have unjustly enriched Defendants.

145.    Defendants' actions, as set forth above, are causing irreparable injury to AAH for which there is no adequate remedy at law.

146.     Defendants' actions, as set forth above, constitute willful trademark infringement which entitles AAH to enhanced damages and remedies set forth in 15 U.S.C. § 1117 and 15 U.S.C. § 1118.

147.     AAH is entitled to recover its reasonable attorneys' fees and costs pursuant 15 U.S.C. § 1117.

148.     AAH is entitled to seizure of Defendants' goods bearing counterfeit marks pursuant to 15 U.S.C. § 1116.

## FIFTH CLAIM FOR RELIEF
### (False Endorsement of the AAH Marks—15 U.S.C. § 1125(a) against all Defendants)

149.     AAH incorporates by reference each of the allegations contained in the previous paragraphs of the Complaint as though fully set forth herein.

150.     As a result of AAH's use of the AAH Marks, AAH has federal trademark registrations for health, hospital, and related services, and has common law trademark rights in various other uses of the AAH Marks.

151.     The AAH Marks have come to represent and symbolize the reputation and valuable goodwill associated with Advocate Health's high-quality hospital, health, and related services.

152.     Defendants are not now, nor have they been since December 31, 2023, authorized to use the AAH Marks or any marks using ADVOCATE and HEALTH.

153.     Defendants are not affiliated with, sponsored, endorsed, or otherwise approved of by Advocate Health.

154.     Defendants have used and continue to use confusingly similar variations of the AAH Marks, including on e-mail communications to Advocate Health employees and product examples of apparel and promotional items, in connection with their offer for sale and the actual sale of apparel and promotional items.

155.    Defendants have used and are using the AAH Marks, or confusingly similar variations of the AAH Marks, in communications to Advocate Health employees and are falsely purporting to be the official supplier of Advocate Health apparel, promotional products, and other goods.

156.    Defendants' use of the AAH Marks, or confusingly similar variations of the AAH Marks, is an effort to trade off of the goodwill developed in the AAH Marks.

157.    Defendants' unauthorized use of the AAH Marks, both registered and in common law, is likely to cause confusion or mistake, or to deceive customers or potential customers into falsely believing that that Defendants are associated with, sponsored, or licensed by Advocate Health, in violation of 15 U.S.C. § 1125(a)(1)(A).

158.    AAH has demanded that Defendants cease all use of the AAH Marks and any variations thereof.

159.    Defendants continue using the AAH Marks and/or variations thereof without any justification.

160.    Defendants have escalated their infringement, and as recently as January 28, 2025, sent Advocate Health employees an e-mail promoting a "Webstore Launch!" and using the AAH Marks, or confusingly similar variations of the AAH Marks, in the mockups of the products they are offering.



162.    ████████████████████████████████████████  the written requests asking Defendants to stop all use of the AAH Marks, Defendants had prior knowledge that their use was not and is not authorized and is in violation of AAH's rights.

163.    Accordingly, Defendants' actions, as set forth above, were and are intentional, willful, and in reckless disregard of AAH's rights.

164.    Defendants' actions, as set forth above, have unjustly damaged the AAH Marks, the goodwill associated with the marks, and AAH's business reputation.

165.    Defendants' actions, as set forth above, have unjustly enriched Defendants.

166.    Defendants' actions, as set forth above, are causing irreparable injury to AAH for which there is no adequate remedy at law.

167.    Defendants' actions, as set forth above, constitute willful infringement, which entitles AAH to enhanced damages and remedies set forth in 15 U.S.C. § 1117 and 15 U.S.C. § 1118.

## SIXTH CLAIM FOR RELIEF
**(Illinois Uniform Deceptive Trade Practices Act with Respect to the AAH Marks—
815 ILCS 510 against all Defendants)**

168.    AAH incorporates by reference each of the allegations contained in the previous paragraphs of the Complaint as though fully set forth herein.

169.    As a result of Advocate Health's use of the AAH Marks, AAH has federal trademark registrations for health, hospital, and related services, and has common law trademark rights in various other uses of the AAH Marks.

170.    The AAH Marks have come to represent and symbolize the reputation and valuable goodwill associated with Advocate Health's high-quality hospital, health, and related services.

171.    Defendants are not now, nor have they been since December 31, 2023, authorized to use the AAH Marks or any marks using ADVOCATE and HEALTH.

172.    Defendants are not affiliated with, sponsored, endorsed, or otherwise approved of by AAH.

173.    Defendants have used and continue to use confusingly similar variations of the AAH Marks, including on e-mail communications to Advocate Health employees and product examples of apparel and promotional items in connection with their offer for sale and the actual sale of apparel and promotional items.

174.    Defendants have used and are using the AAH Marks, or confusingly similar variations of the AAH Marks, in communications to Advocate Health employees and falsely purporting to be the official supplier of Advocate Health apparel, promotional products, and other goods.

175.    Defendants' use of the AAH Marks, or confusingly similar variations of the AAH Marks, is an effort to trade off of the goodwill developed in the AAH Marks.

176.    Defendants' unauthorized use of the AAH Marks and their unauthorized communications to Advocate Health employees and others is likely to cause confusion or mistake or deceive customers or potential customers into falsely believing that Defendants are associated with, sponsored, or licensed by AAH, in violation of 815 ILCS § 510/2.

177.    Defendants have escalated their infringement, and as recently as January 28, 2025, sent Advocate Health employees an e-mail promoting a "Webstore Launch!" and using the AAH Marks on mockups of the products they are offering.



179.    ████████████████████████████ the written requests asking Defendants to cease all use of the AAH Marks, Defendants had prior knowledge that their use was not, and is not, authorized and is in violation of AAH's rights.

180.     Accordingly, Defendants' actions, as set forth above, were and are intentional, willful, and in reckless disregard of AAH's rights.

181.     Defendants' actions, as set forth above, have unjustly damaged the AAH Marks, business reputation, and the goodwill associated with the marks.

182.     Defendants' actions, as set forth above, have unjustly enriched Defendants.

183.     Defendants' actions, as set forth above, are causing irreparable injury to AAH for which there is no adequate remedy at law, and AAH is entitled to injunctive relief pursuant to 815 ILCS § 510/3. Defendants' actions, as set forth above, constitute willful deceptive acts, which entitles Advocate Health to their attorneys' fees set forth in 815 ILCS § 510/3.

**SEVENTH CLAIM FOR RELIEF**
**(Illinois Consumer Fraud and Deceptive Business Practices Act—815 ILCS 505 against all Defendants)**

184.     Advocate Health incorporates by reference each of the allegations contained in the previous paragraphs of the Complaint as though fully set forth herein.

185.     Advocate Health is a consumer for the purposes of the Illinois Consumer Fraud and Deceptive Business Practices Act ("ICFA") because it was a consumer of SpecWork's business products and services.

186.     Defendants' actions constitute deceptive and unfair acts.

187.     Defendants intended that others—namely, Advocate Health's employees—rely on those acts under the pretext that the branded merchandise and other goods sold via the SpecWorks website were authorized and approved of by Advocate Health.

188.     Defendants' conduct occurred in the course of trade or commerce.

189.     Defendants' actions have caused Advocate Health actual damages and injury.

## EIGHTH CLAIM FOR RELIEF
### (Illinois Electronic Mail Act—815 ILCS 511 against all Defendants)

190.     Advocate Health incorporates by reference each of the allegations contained in the previous paragraphs of the Complaint as though fully set forth herein.

191.     Defendants initiated, or caused to be initiated, an unsolicited electronic mail advertisement.

192.     Defendants lacked legal authority to use Advocate Health's trademarks in sending electronic email solicitations to Advocate Health and their employees and, consequently, the electronic mail advertisements contained false or misleading information.

193.     Advocate Health was damaged and injured because of Defendants' conduct, and is therefore entitled to actual damages, attorneys' fees, and costs.

194.     In the alternative, Advocate Health is entitled to the lesser of $10 for each and every unsolicited electronic mail advertisement transmitted in violation of the Act, or $25,000 per day.

## NINTH CLAIM FOR RELIEF
### (Illinois Consumer Fraud and Deceptive Business Practices Act—815 ILCS 505 against all Defendants)

195.     Advocate Health incorporates by reference each of the allegations contained in the previous paragraphs of the Complaint as though fully set forth herein.

196.     Violation of the Electronic Mail Act constitutes an independent violation of, and unlawful practice under ICFA.

197.     Defendants' actions constitute deceptive and unfair acts.

198.     Defendants intended that others—namely, Advocate Health's employees—rely on those acts under the pretext that the branded merchandise and other goods sold via the SpecWorks website were authorized and approved of by Advocate Health.

199.     Defendants' conduct occurred in the course of trade or commerce.

200. Defendants' actions have caused Advocate Health actual damages and injury.

## TENTH CLAIM FOR RELIEF
### (Breach of Contract against SpecWorks)

201. AAH incorporates by reference each of the allegations contained in the previous paragraphs of the Complaint as though fully set forth herein.



## RELIEF REQUESTED

WHEREFORE, Advocate Health demands the entry of judgment against Defendants, as follows:

A. A permanent injunction prohibiting Defendants, and all those in active concert and participation with them, from using the ADVOCATE Marks and/or the AAH Marks, or any colorable imitation of those marks pursuant to 15 U.S.C. § 1116;

B. Compensatory damages in an amount to be proven at trial;

C. An award of damages pursuant to 15 U.S.C. § 1117(a) to Advocate Health, including prejudgment and post-judgment interest, in an amount adequate to compensate for Defendants' infringement of Advocate Health's respective trademark rights;

D. Defendants' profits pursuant to 15 U.S.C. § 1117(a);

E.      Statutory damages as provided under 15 U.S.C. § 1117(c);

F.      Treble damages as provided under 15 U.S.C. § 1117(a);

G.      Disgorgement of all moneys realized by Defendants' unauthorized use of the ADVOCATE Marks and/or AAH Marks and/or any forms thereof;

H.      An order that Defendants be directed to file with the Court and serve on Advocate Health, within thirty (30) days after issuance of an injunction, a report in writing and under oath setting forth in detail the manner and form in which Defendants have complied with the injunction pursuant to 15 U.S.C. § 1116;

I.      An order seizing all infringing goods and materials from Defendant pursuant to 15 U.S.C. § 1116(d);

J.      For Advocate Health's expenses, attorneys' fees, and court costs incurred herein as provided under the Lanham Act, 15 U.S.C. §§ 1117, 1125(a);

K.      A permanent injunction prohibiting Defendants, and all those in active concert and participation with them, from using the ADVOCATE Marks and/or the AAH Marks, or any colorable imitation of those marks, and any other materials in furtherance of their deceptive practices, such as use of Advocate Health's employee list, pursuant to 815 ILCS § 510/3;

L.      For all actual damages under ICFA;

M.      Advocate Health's expenses, attorneys' fees, and court costs incurred herein as provided under 815 ILCS § 510/3;

N.      An order granting Advocate Health the lesser of $10 for each and every unsolicited electronic mail advertisement transmitted in violation of the Act, or $25,000 per day;

29

P.      An order requiring SpecWorks to return or destroy all of Advocate Health's confidential information and enjoining SpecWorks from further use of same;

Q.      For such other relief as the Court deems just and proper.

Dated:  March 6, 2025

Respectfully submitted,

QUARLES & BRADY LLP

By:/s/ *Mark W. Bina*

Mark Bina (ARDC #6288024)
Christian G. Stahl (ARDC #6290825)
Gabrielle Winslow (ARDC #6330644)
QUARLES & BRADY LLP
300 North LaSalle Street, 40th Floor
Chicago, Illinois 60654
(312) 715-5000
mark.bina@quarles.com
christian.stahl@quarles.com
gabrielle.winslow@quarles.com