IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| ADVOCATE HEALTH CARE NETWORK and ADVOCATE AURORA HEALTH, INC. | ) ) ) ) | Case No. 1:25-cv-02419 |
| Plaintiffs, | ) ) | |
| v. | ) ) | |
| SPECWORKS, INC. and CORINA PEACOCK, | ) ) ) | |
| Defendants. | ) ) | |
| SPECWORKS, INC. and CORINA PEACOCK, | ) ) ) | |
| Counterclaimants, | ) ) | |
| v. | ) ) | |
| ADVOCATE HEALTH CARE NETWORK and ADVOCATE AURORA HEALTH, INC., | ) ) ) ) | |
| Counter-Defendants | ) | |

## DEFENDANT CORINA PEACOCK'S MOTION TO DISMISS FOR FAILURE TO STATE A CLAIM

NOW COMES Defendant CORINA PEACOCK ("Ms. Peacock" or "Defendant"), by and through her undersigned counsel, hereby moves this Court pursuant to Federal Rule of Civil Procedure 12(b)(6) to dismiss all claims against her individually. In support of this motion, Ms. Peacock states as follows:

# INTRODUCTION

Defendant Peacock hereby moves this Honorable Court pursuant to Federal Rule of Civil Procedure 12(b)(6) to dismiss all claims against her individually. Plaintiffs' ten-count Complaint improperly names Ms. Peacock as an individual defendant without alleging facts sufficient to establish personal liability separate from her role as President and CEO of SpecWorks, Inc. ("SpecWorks").

The Complaint suffers from fatal deficiencies with respect to Ms. Peacock. First, it fails to allege any specific actions taken by Ms. Peacock in her individual capacity that would give rise to personal liability for the alleged trademark infringement (Counts I and IV), false endorsement (Counts II and V), or deceptive trade practices (Counts III and VI). Second, the Complaint's bare assertion that Ms. Peacock is "President and Chief Executive Officer of SpecWorks" fails to establish the requisite personal direction or participation in any allegedly tortious conduct necessary to impose personal liability for such claims. Third, the Complaint contains no allegations that would support piercing the corporate veil to hold Ms. Peacock personally liable for corporate actions. Fourth, the breach of contract claim (Count X) fails against Ms. Peacock because she was not a party to the Agreement in her individual capacity. Finally, the consumer protection and electronic mail claims (Counts VII, VIII, and IX) similarly fail to allege any basis for imposing personal liability on Ms. Peacock for actions taken by the corporation.

The bedrock principle that a corporate officer is not personally liable for acts performed in her corporate capacity applies with full force here. Plaintiffs cannot circumvent this fundamental protection by simply naming Ms. Peacock individually without specific factual

allegations to support personal liability. Accordingly, all claims against Ms. Peacock should be dismissed.

## RELEVANT FACTUAL BACKGROUND

1. Plaintiffs ADVOCATE HEALTH CARE NETWORK and ADVOCATE AURORA HEALTH, INC. (collectively, "Plaintiffs") filed their Complaint alleging trademark infringement, false endorsement, deceptive trade practices, consumer fraud, electronic mail violations, and breach of contract. (Compl. ¶ 1).

2. Plaintiffs named both SpecWorks, Inc. and Ms. Peacock individually as defendants. (Compl. ¶¶ 6-7).

3. The Complaint acknowledges that Ms. Peacock is "President and Chief Executive Officer of SpecWorks." (Compl. ¶ 7).

4. The Agreement at issue was expressly between SpecWorks and Plaintiffs, not between Ms. Peacock individually and Plaintiffs. (Compl. ¶¶ 49-53, 203).

5. Plaintiffs allege that SpecWorks continued to operate an online employee store and send marketing emails to Plaintiffs' employees after the alleged termination of their business relationship. (Compl. ¶¶ 53-74).

6. Despite the Complaint's considerable length (spanning 30 pages and 200 paragraphs), it is devoid of any specific factual allegations regarding actions Ms. Peacock took in her personal capacity, as distinct from her role as an officer of SpecWorks.

7. The Complaint does not allege that Ms. Peacock personally: a) Created, designed, or approved any allegedly infringing materials; b) Personally sent or directed the sending of any allegedly infringing emails; c) Personally operated or managed the online

webstore; d). Used corporate funds for personal purposes; e) Disregarded corporate formalities; and/or f). Acted with any personal motive distinct from her role as an officer of SpecWorks.

8. The Complaint contains no allegations whatsoever regarding SpecWorks' capitalization, corporate formalities, commingling of funds, or other factors that would support piercing the corporate veil.

9. All alleged communications came from SpecWorks as an entity, not from Ms. Peacock personally. (Compl. ¶¶ 53-74).

10. The Complaint fails to identify even a single action undertaken by Ms. Peacock outside of her capacity as President and CEO of SpecWorks.

## LEGAL STANDARD

To survive a motion to dismiss under Rule 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A claim is facially plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id*. Importantly, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id*. The Court must accept as true all well-pleaded facts, but need not accept legal conclusions or "formulaic recitation of the elements of a cause of action." *Id*.

This standard applies with particular force when a plaintiff attempts to hold a corporate officer personally liable for actions of the corporation. "It is a 'bedrock principle' that if a corporation's employees 'are not alleged to have acted on their own behalf, but only as officers' of the corporation, they 'are not personally liable'." *Service By Air, Inc. v. Phoenix Cartage &*

*Air Freight, LLC*, 78 F. Supp. 3d 852, 858 (N.D. Ill. 2015) (quoting *Zurich American Ins. Co. v. Rite Aid Corp.*, 29 F.4th 794, 807 (7th Cir. 2022)). To state a claim against a corporate officer in her individual capacity, a plaintiff must allege specific facts showing either: (1) that the officer personally participated in tortious conduct outside the scope of her corporate duties; or (2) that circumstances exist to pierce the corporate veil. *Service By Air, Inc., supra.*

Where a plaintiff fails to plead factual content that allows the court to reasonably infer personal liability beyond the officer's corporate role, dismissal is appropriate. *Drink Group, Inc. v. Gulfstream Communications, Inc.*, 7 F. Supp. 2d 1009, 1010-11 (N.D. Ill. 1998) (dismissing claims against individual officers because allegations that they were "a principal of and a driving force behind" the allegedly infringing entity were "innocuous in the absence of allegations that, at the time of incorporation, they were motivated by some improper purpose or acting outside the scope of their corporate duties").

## ARGUMENT

### I. LEGAL STANDARDS FOR PERSONAL LIABILITY OF CORPORATE OFFICERS

#### A. General Principles: The Corporate Shield

Under Illinois law, a corporate officer acting within the scope of her corporate duties cannot be held personally liable for the corporation's acts. *Buckner v. Atlantic Plant Maintenance, Inc.*, 182 Ill.2d 12, 694 N.E.2d 565, 569 (1998). "It is a 'bedrock principle' that if a corporation's employees 'are not alleged to have acted on their own behalf, but only as officers' of the corporation, they 'are not personally liable.'" *Service By Air, Inc. v. Phoenix Cartage & Air Freight, LLC*, 78 F. Supp. 3d 852, 858 (N.D. Ill. 2015) (quoting *Zurich American Ins. Co. v. Rite Aid Corp.*, 29 F.4th 794, 807 (7th Cir. 2022)).

As the Illinois Appellate Court explained in *Murphy v. Walters*, 87 Ill. App. 3d 415, 418, 43 Ill. Dec. 107, 410 N.E.2d 107 (1980), to impose personal liability on a corporate officer, a plaintiff must establish that the officer's statements were fraudulent, that the officer personally made the statements, and that the statements induced the plaintiff to act to their detriment. The court emphasized that "even the fact that the statement is untrue is not enough to make it fraudulent." *Id.*

Corporate officers may be held personally liable only in two limited circumstances:

1. **Personal Participation**: When the officer personally participates in tortious conduct outside the scope of legitimate corporate activity. *See Dangler v. Imperial Machine Co.*, 11 F.2d 945, 947 (7th Cir. 1926) (requiring "personal direction or active participation" in the wrongful acts).

2. **Piercing the Corporate Veil**: When there is "such a unity of interest and ownership that the separate personalities of the corporation and the individual no longer exist" and adherence to the corporate fiction "would sanction a fraud or promote injustice." *Van Dorn Co. v. Future Chem. & Oil Corp.*, 753 F.2d 565, 569-70 (7th Cir. 1985).

Neither circumstance is adequately alleged in the Complaint.

## B. Insufficient Allegations in the Complaint

The Complaint's allegations against Ms. Peacock are fatally deficient in several respects:

1. The Complaint merely identifies Ms. Peacock as "President and Chief Executive Officer of SpecWorks" (Compl. ¶ 7) without alleging any actions she took in her personal capacity;

2. The Complaint refers only to "Defendants" collectively, failing to distinguish between corporate actions and any actions by Ms. Peacock personally;

3. The Complaint lacks any allegation that Ms. Peacock personally designed, created, directed, approved, or participated in any allegedly infringing activity;

4. The Complaint contains no allegations regarding undercapitalization, failure to observe corporate formalities, commingling of funds, or other factors that would justify piercing the corporate veil.

This case closely resembles *Drink Group, Inc. v. Gulfstream Communications, Inc.*, where the court dismissed claims against individual officers because allegations that they were "a principal of and a driving force behind" the allegedly infringing entity were "innocuous in the absence of allegations that... they were motivated by some improper purpose or acting outside the scope of their corporate duties." 7 F. Supp. 2d 1009, 1011 (N.D. Ill. 1998).

Furthermore, as the Illinois Appellate Court held in *Zahl v. Krupa*, 927 N.E.2d 262, 281 (Ill. App. Ct. 2010), even when a corporate officer has been granted significant autonomy in conducting business, this alone is insufficient to establish personal liability. In *Zahl*, the court noted that "directors of necessity devolve upon subordinate officers the 'immediate management of the particular business'" and that a certain amount of trust is "in the very nature of the corporate structure." *Id.* at 282. The mere fact that a corporate officer had access to company resources that were eventually misused does not establish a basis for personal liability absent specific allegations of the officer's personal participation in tortious conduct.

## II. THE CLAIMS AGAINST MS. PEACOCK FAIL TO STATE A CLAIM AS A MATTER OF LAW

### A. Trademark Claims (Counts I, II, IV, and V)

To hold a corporate officer personally liable for trademark infringement, a plaintiff must allege that the officer "personally participates in or directs the tortious acts." *Chinese Consolidated Benevolent Association v. Chicago Chinatown Bridgeport Alliance Service Center*, 1:21-cv-04370, at *11 (N.D. Ill. Sept. 30, 2023). This requires "evidence of personal direction or active participation in the tortious conduct." *Syscon, Inc. v. Vehicle Valuation Servs., Inc.*, 274 F. Supp. 2d 975, 976 (N.D. Ill. 2003).

As the Illinois Appellate Court emphasized in *Murphy*, 87 Ill. App. 3d at 418-19, "a corporate officer or director is not liable for the fraud of other officers or agents merely because of his official character, but he is individually liable for fraudulent acts of his own or in which he participates. The mere fact that a person is an officer or director does not per se render him liable for the fraud of the corporation or of other officers or directors. He is liable only if he with knowledge, or recklessly without it, participates or assists in the fraud."

The Complaint fails to allege any personal involvement by Ms. Peacock in the alleged trademark infringement. It contains no allegations that Ms. Peacock:

1. Personally designed or created any infringing materials;
2. Personally directed or approved specific instances of trademark use;
3. Personally sent promotional emails to Plaintiffs' employees; and/or
4. Personally operated the online webstore.

In *Service By Air, Inc. v. Phoenix Cartage & Air Freight, LLC*, the court dismissed trademark claims against a corporate officer where the complaint failed to allege "personal involvement with [the company's] post-acquisition use of Plaintiff's marks." 78 F. Supp. 3d 852,

868 (N.D. Ill. 2015). Similarly, here, the Complaint merely alleges Ms. Peacock's corporate title without alleging any personal involvement in the alleged infringement. Counts I, II, IV, and V should therefore be dismissed as against Ms. Peacock.

### B. Deceptive Trade Practices Claims (Counts III and VI)

The Illinois Uniform Deceptive Trade Practices Act ("UDTPA") claims fail for the same reasons as the trademark claims. For a corporate officer to be personally liable under the UDTPA, the plaintiff must allege that the officer personally participated in the deceptive acts.

As the Northern District of Illinois explained in *Desmond v. Chicago Boxed Beef Distributors, Inc.*, 921 F. Supp. 2d 872, 884 (N.D. Ill. 2013), claims under the UDTPA "must rise or fall based on [the] Lanham Act claim." The court further clarified that "the UDTPA is 'merely a codification of the common law of unfair competition'" and thus does not require separate analysis from the trademark infringement claims. *Id.* (citing *Mars, Inc. v. Curtiss Candy Co.*, 8 Ill. App. 3d 338, 290 N.E.2d 701, 704 (1st Dist. 1972)).

Importantly, *Desmond* reinforces that individual corporate officers can only be held personally liable when they "willfully and knowingly directed, controlled, or participated" in the deceptive practices. *Id.* at 877. The court specifically held that a corporate officer cannot be held individually liable absent allegations that the officer "personally participated in or directed the tortious acts." *Id.* at 885-86.

Here, the Complaint merely identifies Ms. Peacock as SpecWorks' President and CEO without any allegations of her personal involvement in allegedly deceptive activities. Unlike in *Desmond*, where the plaintiff alleged specific actions taken by individual defendants including email communications arranging the purchase and delivery of infringing products, the Complaint here contains no allegations of specific actions taken by Ms. Peacock to engage in deceptive

practices. *Id.* at 886-87 (finding individual liability appropriate where there were allegations of specific communications, orders placed, and continued transactions even after being informed of the unauthorized nature).

Absent such allegations of personal participation in the deceptive practices, Counts III and VI must be dismissed as against Ms. Peacock.

   C. **Consumer Fraud Claims (Counts VII and VIII)**

As the Illinois Appellate Court emphasized in *Murphy*, 87 Ill. App. 3d at 418-19, "a corporate officer or director is not liable for the fraud of other officers or agents merely because of his official character, but he is individually liable for fraudulent acts of his own or in which he participates. The mere fact that a person is an officer or director does not per se render him liable for the fraud of the corporation or of other officers or directors. He is liable only if he with knowledge, or recklessly without it, participates or assists in the fraud."

The Illinois Appellate Court's analysis in *Zahl* is particularly instructive here. In *Zahl*, the court affirmed summary judgment for corporate directors where there was no evidence they had any reason to suspect the corporation's president was engaged in fraudulent conduct. The court noted that "directors have a right to entrust immediate corporate governance to officers" and that it was "in retrospection alone" that the president appeared unworthy of trust. *Zahl*, 927 N.E.2d at 288.

The Complaint contains no allegations that Ms. Peacock personally participated in any allegedly fraudulent or deceptive conduct. It merely identifies her role as President and CEO without alleging any specific actions she took to violate the ICFA. Counts VII and IX should be dismissed as against Ms. Peacock.

D.  **Illinois Electronic Mail Act (Count VIII)**

The Illinois Electronic Mail Act imposes liability on a person who "initiates or causes to be initiated an unsolicited electronic mail advertisement." *815 ILCS 511/10.* The Complaint merely alleges that "Defendants" sent emails without distinguishing between SpecWorks and Ms. Peacock individually. Without specific allegations that Ms. Peacock personally initiated or directed the sending of the allegedly unsolicited emails, Count VIII must be dismissed as against her.

E.  **Breach of Contract Claim (Count X)**

The breach of contract claim fails because Ms. Peacock was not a party to the Agreement in her individual capacity. The Complaint specifically alleges that "the Agreement is a valid contract between SpecWorks and AAH." (Compl. ¶ 203). When a contract clearly indicates that corporate officers are "signing as officers and on behalf of the corporation, not personally," it is "incumbent on the plaintiff if he wishes to go behind the corporate veil and fasten personal liability on [the officer] as an individual to establish that the corporation, through [the officer], perpetrated a fraud on the plaintiff." *Murphy*, 87 Ill. App. 3d at 418. No such fraud by Ms. Peacock has been alleged here.

The Complaint does not allege that Ms. Peacock personally guaranteed the Agreement, entered into it in her individual capacity, or took any action that would make her personally liable for SpecWorks' obligations. In fact, the Complaint acknowledges that Ms. Peacock is the "President and Chief Executive Officer of SpecWorks" (Compl. ¶ 7), indicating that her involvement with the Agreement was in her corporate capacity.

Count X should therefore be dismissed as against Ms. Peacock.

**CONCLUSION**

Based on the foregoing reasons, Defendant Corina Peacock respectfully requests that this Court dismiss all claims against her individually pursuant to Federal Rule of Civil Procedure 12(b)(6).

DATED: May 16, 2025

Respectfully submitted,

Corina Peacock

/s/ *Abigail Schmitz*
Abigail Schmitz, Esq.
Attorney for *Defendants*

*Prepared by*
Abigail Schmitz, Esq.
Abigail Schmitz Law LLC – Firm ID # 65045
211 W. Wacker Road, Suite 200B
Chicago, Illinois 60606
Tele: (217) 549.8739
Email: abigail@aschmitzlaw.com

**CERTIFICATE OF SERVICE**

    I hereby certify that on this 16th day of May 2025, a copy of Defendant Corina Peacock's Motion to Dismiss was electronically filed via PACER-CM/ECF and were served on Plaintiff and/or Plaintiff's Attorney of Record by electronic mail as follows:

**QUARLES & BRADY LLP**
Mark Bina, Esq.
300 N. LaSalle St., Ste. 4000
Chicago, IL 60654-3406
Email: mark.bina@quarles.com

                                                    */s/ Jana Thorson*
                                                    Jana Thorson, Paralegal
                                                    Email: jana@aschimitzlaw.com